

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

TRYG INSURANCE a/s/o Toms Confectionery )
Group, and TOMS CONFECTIONERY GROUP, )
)                                      Case No.
            Plaintiffs, )
)                           3:15-CV-05343 (MAS) (TJB)
        - against - )
)
C.H. ROBINSON WORLDWIDE, INC. and )                   FINAL PRETRIAL ORDER
NATIONAL REFRIGERATED TRUCKING, LLC, )
)
       Defendants. )

      This matter having come before the Court for a pretrial conference pursuant to Fed.

R. Civ. P. 16; and John T. Lillis, Jr., Esq. of Kennedy Lillis Schmidt & English having appeared

for Plaintiffs Tryg Insurance and Toms Confectionery Group, and Barry N. Gutterman, Esq. of

Barry N. Gutterman & Associates, P.C., and Kenneth A. Olsen, Esq. having appeared for

defendant C.H. Robinson Worldwide, Inc.;  the following Final Pretrial Order is hereby entered:

1.     JURISDICTION:  This action arises out of physical damage to cargo during interstate

     motor carriage.  This Honorable Court has jurisdiction over the subject matter of this action

     pursuant to the ICC Termination Act of 1995 (also known as the "Carmack Amendment"),

     14 U.S.C. § 14706(d), and also pursuant to 28 U.S.C. § 1337(a) and 28 U.S.C. § 1331.

     Venue is proper in this Honorable Court pursuant to 49 U.S.C. §14706(d).  The parties do

     not dispute venue or subject matter jurisdiction.

2.     PENDING/CONTEMPLATED MOTIONS

     Plaintiffs:  (1) Motion to exclude from evidence bills of lading or other documents which

     do not pertain to the shipment in question, which were not produced to plaintiffs in

discovery (including CHRW's proposed Trial Exhibit 10), and which were not produced to plaintiffs until CHRW's summary judgment motion, and

Defendant CHRW:   Motion to exclude five photographs provided in John Lillis' Declaration in Opposition to CHRW's motion for summary judgment.   The photographs do not depict CHRW tractors that can transport cargo and furthermore the photographs are undated.

*The parties suggest the foregoing be addressed during the trial.*

3.   STIPULATED FACTS

All uncontested facts, including answers to interrogatories and admissions are as follows:

[Plaintiffs]

1.   Plaintiff Toms Confectionery Group ("Toms") is a Danish chocolate manufacturer located at Toms Alle 1, DK-2750 Ballerup, Denmark.

2.   Plaintiff Toms was at all relevant times the owner of a shipment of miniature chocolate liquor bottles ("the Cargo").

3.   Plaintiff Tryg Insurance ("Tryg") is a Danish company located at Klausdalsbrovej 601, 2750 Ballerup, Denmark.

4.   Tryg insured the Cargo against loss and damage.

5.   Defendant C.H. Robinson Worldwide, Inc. ("CHRW") is a Delaware corporation with an office for the transaction of business at 14701 Charlson Road, Eden Prairie, Minnesota, 55347.

2

6.    Defendant National Refrigerated Trucking, LLC ("NRT") was a New Jersey company with an office for the transaction of business at 4000 Bordentown Avenue, Suite 45, Sayreville, New Jersey, 08872.

7.    Defendant CHRW subcontracted the physical carriage of the Cargo to defendant NRT.

8.    CHRW hired and paid the subcontractor trucker NRT.

9.    Toms did not hire or pay the subcontractor trucker NRT.

10.   CHRW did not advise Toms that NRT had been subcontracted or otherwise nominated to take possession of the Cargo.

11.   On July 16, 2013, at the premises of API in Levittown, Pennsylvania, the Cargo was delivered to a truck operated by NRT.

12.   The Cargo was in good order and condition at the time it was delivered to the trucker at API in Levittown, Pennsylvania.

13.   A "Straight Bill of Lading" No. 68422 (the "Bill of Lading") was issued by API for the Cargo on July 16, 2013.

14.   The printed language on the face of the Bill of Lading issued for the Cargo named CHRW as "Carrier."

15.   The Bill of Lading covered shipment of the Cargo from API in Levittown, Pennsylvania to Coregistics in Cranbury, New Jersey.

16.     The Bill of Lading stated on its face that the Cargo "**MUST BE TRANSPORTED BETWEEN 52-68° F (11-18° C)**."

17.     Prior to arrival in Cranbury, the refrigeration mechanism of the NRT truck carrying the Cargo malfunctioned and ceased operating.

18.     Once the NRT truck's refrigeration mechanism ceased operating, the internal temperature of the trailer in which the Cargo was carried reached as high as 82° F.

19.     The high temperature in the NRT trailer in which the Cargo was carried resulted in physical damage to the Cargo.

20.     The physical damage sustained by the Cargo occurred while the Cargo was in the care, custody and control of NRT and in transit between Levittown, Pennsylvania and Cranbury, New Jersey.

21.     The Cargo was outturned from the NRT truck which had carried it to Cranbury, New Jersey on July 17, 2013.

22.     The Cargo was outturned from the NRT truck which had carried it to Cranbury, New Jersey in damaged condition.

23.     A Non-Conformance Report No. NCR13-006 was issued with respect to the Cargo on 17 July 2013.

24.     Toms placed CHRW on written notice of the damage to the Cargo by letter dated 19 July 2013.

25.     The physical damage sustained by the Cargo during shipment between Levittown, Pennsylvania and Cranbury, New Jersey rendered the Cargo unfit for use as food.

26.     The physical damage sustained by the Cargo during shipment between Levittown, Pennsylvania and Cranbury, New Jersey resulted in a total loss of the Cargo's value.

27.     The damaged Cargo was on-shipped to, and destroyed by, non-party Bridge Disposal, LLC on or about 14 January 2014.

28.     The value of the Cargo lost as a result of the physical damage sustained by the Cargo during shipment between Levittown, Pennsylvania and Cranbury, New Jersey totaled U.S. $124,034.31.

29.     Toms submitted a claim to its insurer, Tryg, in the amount of $124,034.31 on account of the physical damage to the Cargo.

30.     Tryg paid Toms $115,478.00 on account of the physical damage to the Cargo, which amount reflects the full value of the Cargo less Toms' deductible under the applicable policy of insurance.

31.     On or about September 12, 2013, CHRW issued its invoice No. 1138699681 to Toms ("the Invoice") with respect to the transportation of the Cargo from Levittown, Pennsylvania to Cranbury, New Jersey.

32.     The Invoice described the charges for CHRW's services with respect to the Cargo as "Line Haul" and "Fuel Surcharge."

33.     The invoices issued to Toms for prior shipments described the charges for CHRW's services with respect to the shipments as "Line Haul" and "Fuel Surcharge."

34.     The Invoice did not list or include any charges for "brokerage" or broker's commissions.

35.     The invoices issued to Toms for prior shipments did not list or include any charges for "brokerage" or broker's commissions.

36.     The Invoice described the Cargo as "CHR Load: 131943339."

37.     The Invoice did not indicate that any entity other than CHRW had transported the Cargo.

38.     The Invoice did not identify or refer to NRT or any third-party trucker or subcontractor.

39.     The invoices issued to Toms for prior shipments did not identify or refer to any third-party truckers or subcontractors.

40.     The Invoice was issued by CHRW nearly two months after the delivery of the damaged Cargo to Cranbury, New Jersey.

41.     The "Terms and Conditions" referenced on the one-page Invoice were not printed on the Invoice.

42.     The "Terms and Conditions" referenced in the Invoice did not label or identify CHRW as a "broker."

43.    The "Terms and Conditions" referenced in the Invoice did not identify or describe CHRW's services as "brokerage."

44.    The only party in this action which had a contract with NRT was CHRW.

45.    CHRW did not provide Toms with the contract between CHRW and NRT.

46.    CHRW did not make Toms aware of the contract between CHRW and NRT.

47.    The terms and conditions of the contract between CHRW and NRT were subject to a confidentiality clause (Clause 18) in that contract.

48.    CHRW did not provide Toms with the contract between CHRW and any third-party trucker or entity.

49.    CHRW issued a "Load Confirmation" to NRT with respect to the Cargo.

50.    The "Load Confirmation" issued by CHRW to NRT with respect to the Cargo was not given to Toms prior to the commencement of this litigation.

[Defendant]

1.    On July 9, 2015, plaintiffs Tryg Insurance a/s/o Toms Confectionery Group and Toms Confectionery Group (collectively "Toms") filed a Complaint against CHRW and National Refrigerated Trucking, LLC (hereinafter "NRT"). (Dkt. 1)

2.    On July 27, 2015, CHRW filed its Answer with Affirmative Defenses with Cross-Claims against Co-Defendant NRT. (Dkt. 6)

3.      The Summons and Complaint was served on NRT on August 10, 2015 (Dkt. 9) but NRT failed to appear and, upon information and belief, NRT is no longer in business.

4.      Toms' Complaint alleges that CHRW was hired to provide interstate motor carriage for Toms' cargo and subcontracted the carriage to NRT and that NRT failed to safely transport, handle, and deliver the cargo in the same good order and condition as when received by it.  (Dkt. 1).

5.      Based upon Plaintiff's Complaint its damages were $124,034.31.  (Dkt. 1).

6.      Non-party Assured Packaging, Inc. ("Assured") prepared the bill of lading for the subject shipment.  Bastholm Dep. Tr. 67:9-12.

7.      The bill of lading designated Coregistics in Cranbury, New Jersey as the consignee and that Toms was designated as the "Bill Freight To" party on the bill of lading.  Defendant's Exhibit List "1".

8.      On the bill of lading, CHRW is listed as the carrier and NRT signed the bill of lading as the receiving carrier at origin.  Defendant's Exhibit List "1".

9.      At all relevant times, CHRW had a broker's license which permits it to arrange for the transportation of property by motor carriage.  See Defendant's Exhibit list, paragraph 10 of this pretrial order, Exhibit "6".

10.      CHRW's website page "Investors: Corporate Overview" states that CHRW is a non-asset based transportation provider.  Defendant's Exhibit list "11".

11.     NRT and CHRW had an Agreement at the time of the shipment at issue listing NRT as the carrier, CHRW as the broker, and that NRT was an independent contractor.  See Defendant's Exhibit List "5".

12.     NRT had physical possession of Toms cargo at the time that the cargo was damaged.  Defendant's Exhibit List "1" and "4".

13.     NRT had a certificate of insurance at the time of the cargo was damaged while in the possession of NRT and CHRW was named as the certificate holder.  Defendant's Exhibit List "9".

14.     CHRW did not issue a bill of lading for the shipment.  Hays Dep. Tr. 63:10-12.

15.     CHRW hired NRT on terms under which NRT would receive payment for its services from CHRW when providing an invoice on Assured's bill of lading.  Hays Dep. Tr. 49:9-18.

16.     CHRW had no master contract with Toms.

17.     On July 24, 2013, International surveyors and Adjusters (USA) ("ISA"), upon instructions for UK Webster Overseas Ltd. ("Webster"), on behalf of Toms, conducted a survey of the damages and was informed that CHRW subcontracted NRT to physically transport the Toms cargo and that the damage was due to a machinery malfunction while the cargo was in NRT's possession.  Defendant's Exhibit List "8".

18.     Michael Bastholm, customer service representative for Toms, testified that his bookings with CHRW for loads was by email since 2007, 2008, and CHRW never told him that

9

CHRW did not own any equipment for Toms' transportation. Bastholm Dep. Tr. 51:7-12; 65:22-24; 66:3-6.

19.    CHRW's September 13, 2013 invoice for the shipment at issue referred to "terms and conditions" which were not set out on the invoice or on any other document delivered to Toms in connection with the subject shipment. Defendant's Exhibit List "14".

20.    CHRW never had physical possession of Toms goods that were the subject of the complaint and which were transported by NRT. Hays Dep. Tr. 57:3-6.

4.    PLAINTIFFS' CONTESTED FACTS

A.    Plaintiffs intend to prove the following contested facts with regard to liability:

1.    From 2007-2013, Toms hired CHRW on numerous occasions to transport cargoes of refrigerated chocolates within the United States.

2.    CHRW is a "logistics provider," meaning that CHRW is in "the business of transportation as far as it relates to shipping goods from point A to point B, whether it is trucking, air, ocean."

3.    From 2007-2013, Toms hired CHRW on numerous occasions with respect to transportation of loads of Toms' cargoes of refrigerated chocolates within the United States.

4.    As far as Toms was aware, CHRW transported Toms' cargoes.

5.    CHRW never advised Toms that it (CHRW) was a transportation broker only.

6.    CHRW never advised Toms that it (CHRW) did not own trucks or equipment to transport Toms' cargoes.

7.    CHRW never advised Toms that it (CHRW) would disclaim liability for in-transit damage to Toms' cargoes on the ground that it was merely a "broker."

8.    Had CHRW advised Toms that it (CHRW) was a transportation "broker" only, and would disclaim liability for damage to Toms' cargoes during transit, Toms would have not done business with CHRW.

9.    In or about July 2013, Toms contacted CHRW to arrange shipment of the Cargo from the facility of non-party Assured Packing Inc. ("API") in Levittown, Pennsylvania to non-party Coregistics in Cranbury, New Jersey.

10.   Toms believed CHRW would physically carry the Cargo from Levittown, Pennsylvania to Cranbury, New Jersey.

11.   Toms did not learn that NRT had transported the Cargo until after the damaged Cargo was delivered to Cranbury, New Jersey.

12.   Toms did not intend to hire a "broker" with respect to the Cargo.

13.   Toms did not intend to hire CHRW as a "broker" with respect to the Cargo.

14.   Toms did not hire CHRW as a "broker" with respect to any of the dozens of prior Toms cargoes in respect of which CHRW was hired.

15.   CHRW held itself out to Toms as a one-stop, "seamless" transportation provider which would take responsibility for moving Toms' shipments from origin to destination.

16.   When CHRW provides a quote to a customer for a shipment, the customer is not made aware of, or put in contact with, a subcontracted carrier to which CHRW intends to entrust the customer's goods.

17.   CHRW never held itself out to Toms as a middleman or "broker" whose services were limited to arranging contracts between Toms and third-party truckers.

18.   CHRW never informed Toms that CHRW would act only as a middleman or "broker" to arrange a contract between Toms and a third-party trucker.

19.   Throughout the relationship between CHRW and Toms, Toms considered CHRW to be a transporter of goods.

20.   Throughout the relationship between CHRW and Toms, Toms understood CHRW to be Toms' transportation contractor, and that CHRW was to be responsible for the transport of Toms' shipments.

21.   The invoices issued to Toms for prior shipments did not indicate that any entity other than CHRW had transported the shipments.

22.   The "Terms and Conditions" referenced on the CHRW Invoice were not provided to Toms.

23.    The "Terms and Conditions" referenced on the Invoice were accessible only through a web-site link.

24.    When Toms notified CHRW of the loss that is the subject of this lawsuit, CHRW did not tell Toms that CHRW would not pay the claim because it was acting merely as a "broker" with respect to the Cargo.

25.    CHRW received bills of lading which identified CHRW as "Carrier" on prior occasions respecting Toms' shipments.

26.    Though it received bills of lading which identified CHRW as the "Carrier" during the relationship between CHRW and Toms, CHRW never advised Toms that the description of CHRW as "Carrier" on the bills of lading was incorrect.

27.    Though it received bills of lading which identified CHRW as the "Carrier" during the relationship between CHRW and Toms, CHRW never made any attempt to object to or change the description of CHRW as "Carrier" on the bills of lading.

28.    CHRW's "Load Confirmation" form was internal to the CHRW – NRT transaction, and would never have been sent to Toms because it was "proprietary."

29.    Toms contacted CHRW for the purposes of having Toms' shipments transported from origin to destination.

30.    Toms did not approach CHRW for the purpose of being connected by CHRW with a third-party trucker.

31.     CHRW never informed Toms that CHRW intended to subcontract carriage of Toms' shipments to a third-party trucker.

32.     CHRW never informed Toms that CHRW would act as anything other than a one-stop, "seamless" transportation provider which would take responsibility for moving Toms' shipments from origin to destination.

33.     CHRW was authorized by Toms to transport the Cargo.

34.     CHRW acted as a "Carrier," as that term is defined under the Carmack Amendment, with respect to Toms' shipments.

B.   Plaintiffs intend to prove the following contested facts with regard to damages:

None.  Plaintiffs' damages are stipulated and agreed at the principal amount of $124,034.31.

5.   DEFENDANT'S CONTESTED FACTS

A.   Defendant CHRW ("CHRW") intends to prove the following facts contested by plaintiff with regard to liability:

1.     Plaintiff denied that the bill of lading, prepared by Plaintiff's agent, designated National Refrigerated Trucking ("NRT") as carrier, and CHRW will identify the bill of lading at trial as an exhibit that lists NRT was listed as the carrier who signed the bill of lading and took possession of Toms' goods.

2.     Plaintiff argues that CHRW owns equipment to transport equipment for Toms. However, CHRW will provide testimony and documentary evidence at trial that it

14

owns no equipment to transport cargo for Toms or any other shipper/consignee at any time because it is not a motor carrier.

3. Plaintiff contends that it denies knowledge and information that CHRW has no federal carrier motor license. CHRW will provide testimony at the time    of trial contesting this allegation.

4. Plaintiff denies knowledge that CHRW does not get involved with loading or unloading of cargo.  However, testimony at trial by CHRW's witness will prove that CHRW does not load or unload cargo and also will prove, despite plaintiff's contentions, that CHRW never takes possession of cargo to be transported.

5. CHRW's website refers to it as a non-asset based transportation provider which means it does not have equipment to transport customer's freight.  Plaintiff contests the relevancy of this statement and CHRW will have testimony and documentary evidence in support.

6. If Plaintiff, intends to produce photographs at trial of containers with CHRW's name on them, CHRW will object to the introduction of these photographs that were not produced during discovery (but only provided in plaintiff's opposition papers to CHRW's motion for summary judgment) as being inadmissible and irrelevant since they do not depict  tractors power units which is the only type of equipment that can transport containers.

7.   Plaintiff denies that CHRW brokered 150 loads for Toms between 2009-2014. CHRW will present an exhibit that refers to the 150 loads for Toms that were brokered by CHRW with supporting testimony.

8.   Plaintiff contends that CHRW was a carrier for purposes of Carmack and CHRW will provide testimony at trial rebutting this allegation.

9.   Plaintiff denies the relevancy of the survey by International Surveyors and Adjusters (USA) which did not refer to CHRW as a carrier for the load at issue nor having in any way contributing to the loss of cargo that was carried by NRT. CHRW will introduce this survey report as an exhibit at trial, which speaks for itself, which was prepared on Plaintiff's behalf, and which supports the above mentioned statement in the survey report.

10.  Plaintiff contends that CHRW was not merely an arranger of transportation of cargo and that CHRW was a carrier because it was listed on the bill of lading . CHRW will provide testimony explaining that CHRW, as well as NRT, were listed by the shipper, Assured Packaging, who prepared the bill of lading as Plaintiff's agent, and was mistaken by referring to CHRW being a carrier.

11.  Plaintiff objects to the admission of bills of lading for prior shipments that did not refer to CHRW as a carrier.  CHRW will provide testimony at trial explaining the production of these bills of lading were used to rebut plaintiff's position that CHRW acted as a carrier.

12.    Although plaintiff admits that its invoice to Toms refers to CHRW's terms and
conditions and designates CHRW as an "agent" for Toms to perform duties
associated with the import and export of goods, plaintiff denies that CHRW engages
others to transport cargoes.  CHRW will provide testimony that CHRW acted as
agent only as stated above in arranging with carriers to transport cargo.  Plaintiff
admits that it sued NRT as the carrier in possession of the cargo at the time of the
loss and that CHRW subcontracted the shipment to NRT.  Accordingly, CHRW
will provide testimony that they could not act as a carrier. Furthermore, plaintiff
did not allege that CHRW acted as an origin carrier in its Complaint and there was
no testimony by Mr. Bastholm that CHRW was an origin carrier.

13.    Plaintiff contends that Bastholm considered CHRW to be a transporter of goods as
carrier but since he testified that CHRW subcontracted the physical carriage of the
cargo to NRT, CHRW disputes that it was a carrier and testimony by CHRW will
be presented at trial to support such.

14.    Bastholm testified that he understood CHRW to be their transport contractor and
that CHRW would be responsible for the transport of Toms shipment.  CHRW
contests this position as NRT was admittedly, by Toms and its agent, as the carrier
who was in possession of Toms' goods at the time of the loss.

15.    Plaintiff alleges that it was never informed by CHRW that it did not own trucks to
deliver but CHRW counters with proof that it did not own tractors to deliver the
cargo.

16.    Bastholm testified that he never had knowledge that-CHRW was only a broker. However, through cross examination at trial, he would have known that CHRW was only a broker if he had vetted CHRW from 2007 to 2014 and if he checked their website to determine that CHRW only acted in a capacity in which they arranged for the transportation of cargo by motor carriage.

17.    CHRW has no motor carrier license and owns no tractors or power equipment to transport cargo by motor carriage.

18.    The survey report by ISA states in Section 1.2: "We also understand Assured Packaging appointed CHRW on behalf of Toms Confectionery Group to arrange and coordinate the delivery of 2430 out of the 2662 cartons from Levittown, Pennsylvania, to Coregistics located at Prospect Plains Road in Cranbury, New Jersey."

19.    The ISA survey does not refer to CHRW as being a carrier of the load nor having in any way contributed to the loss of the cargo which was carried by NRT.

20.    Toms had several prior shipments which CHRW arranged for them and CHRW was not listed as a carrier on any of the bills of lading.  These bills of lading – CHRW's trial exhibit 10 – were submitted in admissible rebuttal to plaintiffs' opposition to CHRW's motion for summary judgment and despite plaintiffs' contention that these bills of lading should be excluded from evidence, there is no surprise or prejudice to plaintiffs' because Mr. McLoughlin will be present for trial and can be cross examined on these bills of lading, unlike the unavailable witness who took the photographs identified as plaintiffs' exhibit "P".

21.   The word broker is encompassed within the term 3PL ("third party logistics provider") and CHRW was only an arranger of transportation of the cargo.

6.   PLAINTIFFS' WITNESSES

A.   On liability, plaintiffs intend to call the following witnesses who will testify in accordance with the following summaries:

1.   Michael Bastholm:

Mr. Bastholm will testify concerning the relationship and communications between Toms and CHRW on prior shipments and on shipment in question; the role and manner in which CHRW held itself out to Toms; Toms' understanding, authorization and expectation as to CHRW's role as Carrier of prior shipments and shipment in question; Toms' entrustment of prior shipments and shipment in question to CHRW for transportation; the arrangement with CHRW for shipment of the Cargo in this case from Pennsylvania to New Jersey; ownership of the Cargo; notification of damage to the Cargo; extent of loss due to the Cargo damage.

2.   Janet Hays (by transcript of her March 4, 2016 deposition):

Some or all of Ms. Hays' testimony will be read concerning the relationship and communications between Toms and CHRW on prior shipments and on the shipment in question; the role and manner in which CHRW held itself out to Toms; CHRW's subcontracting of the shipment in question to NRT; the nature of the information and documents shared and not shared by CHRW with Toms concerning

CHRW's alleged "broker" role with respect to prior shipments and shipment in question.

B.    On damages:  None.  Plaintiffs' damages are stipulated and agreed at the principal amount of $124,034.31.


7.    <u>DEFENDANT'S WITNESSES</u>

A.    On liability, defendant intends to call the following witnesses who will testify in accordance with the following summaries:

1.    Christopher McLoughlin, Risk Manager for the North American Surface Transportation Division for C.H. Robinson Worldwide ("CHRW").  He will testify as to his familiarity with the lawsuit filed by plaintiff; CHRW's sole role as a broker; CHRW's arranging for National Refrigerated Trucking, LLC ("NRT") as the motor carrier for the subject shipment; the load confirmation between CHRW and NRT and also the agreement between them for the subject shipment; the invoice from CHRW to Toms for the shipment at issue; CHRW's website describing its role as a broker; the bill of lading for the subject shipment and prior bills of lading for CHRW's arrangement of shipments for Toms; and the number of shipments that CHRW arranged for Toms by the hiring of motor carriers prior to the shipment at issue.

2.    The March 4, 2016 deposition of Janet Hays will be read or admitted into evidence at the trial since Ms. Hays has retired from the employ of CHRW and she resides more than 100 miles from Trenton, NJ.   She was an account coordinator employed

by CHRW in California.  She will testify, through a reader, and her deposition testimony will show, that CHRW hired NRT to arrange for the transport of Toms cargo; that CHRW did not issue a bill of lading for the shipment of Toms cargo; that she sent the load confirmation for the shipment to NRT's employee, Jean Smith, to confirm CHRW's agreement with NRT as to the agreed upon terms of the brokerage; that there was no master agreement with Toms for the shipment and it brokered for them 150 loads for transport by motor carriage for Toms from 2009-2014; that the term broker is encompassed within the term 3PL (third party logistics provider) and CHRW was the broker for the shipment at issue and CHRW acted merely as an arranger for the transportation of the cargo. *The parties propose submitting the transcript as evidence in lieu of reading.*

B.   ON DAMAGES, CHRW DOES NOT CONTEST THE AMOUNT OF THE DAMAGES ALLEGED IN THE COMPLAINT

C.   PLAINTIFFS OBJECT TO THE FOLLOWING WITNESSES FOR THE REASONS STATED:

   1.   Plaintiffs will object to the introduction by CHRW at trial, through witnesses McLoughlin and/or Hays, of testimony concerning the contents of bills of lading or other documents which were not produced to plaintiffs in discovery (including CHRW's Trial Exhibit 10) and which were not produced to plaintiffs until CHRW's summary judgment motion.

8.   EXPERT WITNESSES

None for any party.

9.   PLAINTIFFS' TRIAL EXHIBITS

    A.   Plaintiffs intend to introduce into evidence the exhibits listed on the attached exhibit list (list by number with a description of each):

    A.   Straight Bill of Lading No. 68422 dated 16 July 2013 (PL 0013).

    B.   Packing List dated 16 July 2013 (PL 0014).

    C.   CHRW Invoice No. 1138699681 dated 12 September 2013 (Bastholm Decl. Ex. C).

    D.   DSV Ocean transport A/S Sea Waybill No. EBJ0001833 dated 28 June 2013 )(PL 001).

    E.   Marine Container Services, Inc. Pickup/Delivery receipt dated 11 July 2013 (PL 002).

    F.   Customs Invoice No. 90414608 dated 14 June 2013 (PL 003).

    G.   Coregistics Non-Conformance Report No. NCR13-006 dated 17 July 2013, with photos (PL 0022-0028).

    H.   July 19, 2013 written notice of damage from Toms to CHRW (PL 0015).

    I.   International Surveyors & Adjusters (USA) Report dated 4 December 2013, with 17 color photos (PL 0029-0050).

    J.   Bridge Disposal, LLC Certificate of Destruction dated 14 January 2014 (PL 0016).

    K.   WK Webster (Overseas) Ltd. claim adjustment form (PL 0020-0021).

    L.   Subrogation Form signed 4 April 2014 (PL 0019).

    M.   C.H. Robinson "Contract Addendum and Carrier Load Confirmation" No. 131943339 (McLoughlin Affidavit Ex. "4", Doc 15-6 at pp. 13-16 of 34).

    N.   "Agreement For Motor Contract Carrier Services" between CHRW and NRT dated as of 17 March 2009 (McLoughlin Affidavit Ex. "5", Doc 15-6 at pp. 19-28 of 34).

    O.   C.H. Robinson International, Inc. "Terms and Conditions of Service" (Bastholm Decl. Ex. D).

    P.   Five (5) Color Photographs of tractor-trailers bearing CHRW logos (Lillis Decl. Ex. 3).

    Q.   Condensed Transcript of February 16, 2016 Deposition of Michael Bastholm.

R.  Condensed transcript of March 4, 2016 Deposition of Janet Hays, with exhibits.

B.  CHRW objects to the introduction of plaintiffs' exhibits (set forth number of an exhibit and grounds for objection):

Plaintiffs' Trial Exhibit P:  CHRW objects to this exhibit on the grounds that the photographs do not depict CHRW tractors that can transport cargo and the photographs are undated.  Furthermore, CHRW objects to this exhibit because it was attached to plaintiffs' attorney's affidavit in opposition to CHRW's motion for summary judgment and submitted after the close of fact discovery

10.  DEFENDANT'S TRIAL EXHIBITS

A.  CHRW intends to introduce into evidence the exhibits listed on the attached exhibit list (list by number with a description of each):

1.  Complaint

2.  Answer with Cross Claims

3.  Bills of lading for the shipment at issue

4.  Confirmation issued for the pickup of the shipment at issue

5.  Agreement between CHRW and NRT in effect at the time of the shipment

6.  Broker's license in effect at the time of the shipment

7.  NRT motor carrier's license in effect at the time of the shipment

8.  Survey by International Surveyors and Adjusters dated July 24, 2013

9.  NRT's Certificate of Insurance in effect at the time of the shipment at issue

10.  Bills of lading for shipments arranged for Toms by CHRW prior to the shipment at issue with corresponding invoices for said shipments

11.    Screen shot from CHRW's public website in effect at the current time which had the same language displayed on such website at the time of the delivery of the shipment at issue.

12.    Condensed deposition transcript of Janet Hays taken on March 4, 2016

13.    Condensed deposition transcript of Michael Bastholm taken on February 16, 2016

14.    Invoice for shipment at issue.

B.    Plaintiffs object to the introduction of CHRW's exhibits (set forth number of an exhibit and grounds for objection):

CHRW Trial Exhibit 10:  Plaintiffs object to this exhibit on the grounds that its contents, a selection of approximately 9 bills of lading from Toms shipments in 2009, 2011 and 2012, were not disclosed or produced to plaintiffs at any time during discovery or prior to the parties' depositions, and were not revealed to plaintiffs until they were attached as an exhibit to the affidavit of Christopher McLoughlin in support of CHRW's motion for summary judgment.  Plaintiffs object to any use of these materials at trial on grounds of delay, surprise and prejudice.

11.    PLAINTIFFS' LEGAL ISSUES

1.    Did defendant CHRW act as a "Carrier" for purposes of the Carmack Amendment with respect to the Cargo?

2.    Did defendant CHRW act as a "broker" for purposes of the Carmack Amendment with respect to the Cargo?

12. <u>DEFENDANT'S LEGAL ISSUES</u>

    1.    The Carmack Amendment applies to NRT, the motor carrier who transported Toms cargo in interstate commerce.  As for CHRW, the Carmack Amendment does not apply as it was not a motor carrier for hire at the time of the shipment at issue. Instead, CHRW, with only a broker's license, acted solely as a broker in accordance with its broker's license.  As such, there was no breach of contract against CHRW as alleged in plaintiff's first cause of action in its Complaint and this cause of action is preempted by federal law.  This legal issue will be fully discussed in its trial brief.

13. <u>CHOICE OF LAW</u>

State Law Not Applicable.  The rights and liabilities of the parties to this action are governed by the U.S. Carmack Amendment, 49 U.S.C. § 14706, under which CHRW either is, or is not, liable to plaintiffs on account of the damage to Toms' Cargo.

14. <u>MISCELLANEOUS</u>

    A.    Witness Janet Hays, account coordinator for CHRW has retired, is more than 100 miles from Trenton, New Jersey and, as such, her deposition testimony will be read through a reader.  See paragraph 7(a)(2) above.  Plaintiffs reserve their right to read at trial from any and all admissible portions of Ms. Hays' deposition testimony, including all admissible exhibits marked at Ms. Hays' deposition.

    B.    Witness Michael Bastholm of Toms resides and is located in the Kingdom of Denmark.  Mr. Bastholm may testify at trial through a Danish-English translator.

    C.    The parties have agreed in advance of trial as follows:

1.  If defendant C.H. Robinson Worldwide, Inc. is adjudged to have acted as a "Broker" for purposes of the Carmack Amendment, 49 U.S.C. § 14706, with respect to the shipment which is the subject matter of this action, then defendant C.H. Robinson Worldwide, Inc. shall have no liability to plaintiffs on account of the subject shipment and plaintiffs' complaint will be dismissed as against defendant C.H. Robinson Worldwide, Inc. without costs to any party.

2.  If defendant C.H. Robinson Worldwide, Inc. is adjudged to have acted as a "Carrier" for purposes of the Carmack Amendment with respect to the subject shipment, then defendant C.H. Robinson Worldwide, Inc., and plaintiffs, consent to the entry of judgment in plaintiffs' favor and against defendant C.H. Robinson Worldwide, Inc. in the principal amount of U.S. $124,034.31, together with such pre-judgment interest thereon as the Court shall award.

15.  <u>JURY TRIAL</u>: Inapplicable.

16.  <u>NON-JURY TRIALS</u>: Not later than [briefing date to be determined by the Court]:

A.  Each side shall submit to the Judge and to opposing counsel a trial brief or memorandum in accordance with Local Civil Rule 7.2B, with citation to authorities and arguments in support of its position on all disputed issues of law. In the event a brief shall not be filed, the delinquent party's complaint or defense may be stricken.

B.  Each side shall submit to the Judge and other counsel proposed written findings of fact and conclusions of law. There is reserved to counsel the right to submit additional

proposed findings of fact and conclusions of law during the course of the trial on those matters that cannot reasonably be anticipated.

Counsel for CHRW have unavailable dates for trial in March, April and May as follows:  March 13-21; April 7, 10, 13, 14, 17-21; and May 18-19.

17.    TRIAL COUNSEL:

      For Plaintiffs:

                John T. Lillis, Jr., Esq. (Lead Counsel)
                Kennedy Lillis Schmidt & English
                75 Maiden Lane, Suite 402
                New York, New York  10038
                Tel. (212) 430-0800
                Fax (212) 430-0810
                JLillis@klselaw.com

      For Defendant:

                Barry N. Gutterman, Esq. (Lead Counsel)
                Barry N. Gutterman & Associates, P.C.
                85 Davids Way
                Bedford Hills, New York  10507
                (212) 983-1466
                bngassc@aol.com

                        - and -

                Kenneth A. Olsen, Esq.
                33 Philhower Road
                Lebanon, New Jersey  08833
                (908) 832-9207
                kolsen53@earthlink.net

18.    BIFURCATION

      None.  Only liability is being tried.

19.  ESTIMATED LENGTH OF TRIAL

One (1) day for liability.  The principal amount of plaintiffs' damages is stipulated and
agreed at $124,034.31.

AMENDMENTS TO THIS PRETRIAL ORDER WILL NOT BE PERMITTED UNLESS THE COURT DETERMINES THAT MANIFEST INJUSTICE WOULD RESULT IF THE AMENDMENT IS DISALLOWED.

Attorneys for Plaintiffs

_____s/John T. Lillis, Jr._____
John T. Lillis, Jr., Esq.
KENNEDY LILLIS SCHMIDT & ENGLISH
75 Maiden Lane, Suite 402
New York, NY 10038
Tel: (212) 430-0800
JLillis@klselaw.com

Attorneys for Defendant

_____s/ Barry N. Gutterman_____
Barry N. Gutterman, Esq.
BARRY N. GUTTERMAN & ASSOCIATES, P.C.
85 Davids Way
Bedford Hills, NY 10507
(212) 983-1466
bngassc@aol.com

- and -

_____s/ Kenneth A. Olsen_____
Kenneth A. Olsen, Esq.
33 Philhower Road
Lebanon, new Jersey 08833
(908) 832-9207
kolsen53@earthlink.net

DATED: ___March 8th___, 2017

_____
U.S. MAGISTRATE JUDGE

29



Case 3:15-cv-05343-MAS-TJB - TRYG INSURANCE et al v. C.H. ROBINSON WORLDWIDE, INC. et al.
Thomas Murphy
to:
tjb_orders@njd.uscourts.gov
03/01/2017 03:26 PM
Cc:
"BNGASSC@aol.com", "kolsen53@earthlink.net", Jack Lillis, Marek Modzelewski
Hide Details
From: Thomas Murphy <tmurphy@klselaw.com>
To: "tjb_orders@njd.uscourts.gov" <tjb_orders@njd.uscourts.gov>
Cc: "BNGASSC@aol.com" <BNGASSC@aol.com>, "kolsen53@earthlink.net"
<kolsen53@earthlink.net>, Jack Lillis <jlillis@klselaw.com>, Marek Modzelewski
<mmodzelewski@klselaw.com>

1 Attachment



15cv05343_Final_Pretrial_Order.docx

To:
Chambers of the Honorable
Tonianne J. Bongiovanni, U.S.M.J.
U.S. District Court, District of New Jersey

Re:
TRYG INSURANCE, et al. v. C.H. ROBINSON WORLDWIDE, INC., et al.
Case No.:  3:15-cv-05343-MAS-TJB
Our File:  5980

Dear Judge Bongiovanni:

We are counsel for plaintiffs in the above-referenced action.

Attached per the Court's Text Order of January 17, 2017, we respectfully attach herewith the parties' joint Final Pretrial Order in MS Word format.

Respectfully,

John T. Lillis, Jr.
Thomas C. Murphy
Kennedy Lillis Schmidt & English
75 Maiden Lane, Suite 402
New York, NY  10038
JLillis@klselaw.com
TMurphy@klselaw.com
Tel. (212) 430-0800
Fax (212) 430-0810