S:\Files\5980_C.H. Robinson\POST-TRIAL SUBMISSIONS\Post-Trial ConclusionsLaw-Table of Contents.doc

KENNEDY LILLIS SCHMIDT & ENGLISH
John T. Lillis, Jr., Esq.
JLillis@klselaw.com
75 Maiden Lane, Suite 402
New York, New York 10038
Tel. 212-430-0800
Fax  212-430-0810

Attorneys for Plaintiffs
TRYG INSURANCE a/s/o Toms Confectionery Group
and TOMS CONFECTIONERY GROUP

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| TRYG INSURANCE a/s/o Toms Confectionery Group, and TOMS CONFECTIONERY GROUP, | Case No. |
| Plaintiffs, | 3:15-CV-05343 (MAS) (TJB) |
| - against - | |
| C.H. ROBINSON WORLDWIDE, INC. and NATIONAL REFRIGERATED TRUCKING, LLC, | PLAINTIFFS' POST-TRIAL PROPOSED CONCLUSIONS OF LAW |
| Defendants. | |

## TABLE OF CONTENTS

Page

INTRODUCTION ...........................................................................................................1

**PART I**

CHRW'S ASSERTION THAT IT MERELY "ARRANGED FOR"
THE TRANSPORTATION OF TOMS' SHIPMENTS IS
UNAVAILING, BECAUSE CHRW WAS AUTHORIZED TO
TRANSPORT THE CARGO AND BOUND ITSELF TO DO SO ........................................2

Case 3:15-cv-05343-MAS-TJB Document 47 Filed 06/22/17 Page 2 of 14 PageID: 646

**PART II**

THE BILL OF LADING, AND THE CHRW INVOICE, ARE
CONSISTENT ONLY WITH CHRW HAVING ACTED AS A CARRIER .......................... 5

    A.    **The Bill of Lading** ............................................................................................. 5

    B.    **The CHRW Invoice** ......................................................................................... 6

**PART III**

CHRW'S SELF-LABELING AS A "BROKER,"
FIRST ASSERTED IN THE CONTEXT OF
THIS LITIGATION, IS WITHOUT EFFECT ......................................................................... 8

**PART IV**

THAT CHRW DID NOT HAVE PHYSICAL POSSESSION OF
THE CARGO DOES NOT AFFECT CHRW'S CARRIER STATUS ................................. 9

**PART V**

THAT CHRW HELD A GOVERNMENT-ISSUED AUTHORITY
AS A TRANSPORTATION BROKER, AND FAILED TO OBTAIN
GOVERNMENT CARRIER AUTHORITY, IS IMMATERIAL ......................................... 10

**PART VI**

EVEN THOUGH THE EXISTENCE AND CONTENTS OF CHRW'S
"TERMS AND CONDITIONS" WERE UNKNOWN TO TOMS, THE
DEGREE OF CONTROL OVER THE TRANSPORTATION
RETAINED BY CHRW IN THOSE "TERMS AND CONDITIONS"
IS NOT CONSISTENT WITH CHRW'S BEING A MERE "BROKER" ........................... 11

CONCLUSION ........................................................................................................................... 12

KENNEDY LILLIS SCHMIDT & ENGLISH
John T. Lillis, Jr., Esq.
JLillis@klselaw.com
75 Maiden Lane, Suite 402
New York, New York 10038
Tel. 212-430-0800
Fax  212-430-0810

Attorneys for Plaintiffs
TRYG INSURANCE a/s/o Toms Confectionery Group
and TOMS CONFECTIONERY GROUP

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| TRYG INSURANCE a/s/o Toms Confectionery Group, and TOMS CONFECTIONERY GROUP, | Case No. |
| Plaintiffs, | 3:15-CV-05343 (MAS) (TJB) |
| - against - | |
| C.H. ROBINSON WORLDWIDE, INC. and NATIONAL REFRIGERATED TRUCKING, LLC, | PLAINTIFFS' POST-TRIAL PROPOSED CONCLUSIONS OF LAW |
| Defendants. | |

Plaintiffs Tryg Insurance ("Tryg") and Toms Confectionery Group ("Toms") hereby respectfully submit the following post-trial proposed conclusions of law:

## INTRODUCTION

1. The Court has jurisdiction over the subject matter of this action pursuant to the ICC Termination Act of 1995 (known as the "Carmack Amendment"), 14 U.S.C. § 14706(d), and also pursuant to 28 U.S.C. § 1337(a) and 28 U.S.C. § 1331. The parties do not dispute venue or subject matter jurisdiction.

2. If defendant C.H. Robinson Worldwide, Inc. ("CHRW") is adjudged to have acted as a "Broker" for purposes of the Carmack Amendment, 49 U.S.C. § 14706, with respect to the

shipment which is the subject matter of this action, then CHRW shall have no liability to plaintiffs on account of the subject shipment and plaintiffs' complaint will be dismissed as against CHRW without costs to any party. March 8, 2017 Final Pretrial Order (Docket Entry 30) at § 14, ¶ C.1.

3. If CHRW is adjudged to have acted as a "Carrier" for purposes of the Carmack Amendment with respect to the subject shipment, then the Court shall enter judgment in plaintiffs' favor and against CHRW in the principal amount of $124,034.31, together with such pre-judgment interest thereon as the Court shall award. March 8, 2017 Final Pretrial Order (Docket Entry 30) at § 14, ¶ C.2.

## PART I

### CHRW'S ASSERTION THAT IT MERELY "ARRANGED FOR" THE TRANSPORTATION OF TOMS' SHIPMENTS IS UNAVAILING, BECAUSE CHRW WAS AUTHORIZED TO TRANSPORT THE CARGO AND BOUND ITSELF TO DO SO

4. CHRW argues that it was only a "broker" because CHRW merely "arranged for" the transportation of Toms' shipments.

5. Liability under the Carmack Amendment extends beyond the physical carrier to any carrier "providing transportation or service." 49 U.S.C. § 14706(a)(1).

6. "Transportation" as used in the Carmack Amendment is defined as including "a motor vehicle ... or equipment of any kind related to the movement of ... property ... and ... services related to that movement, *including arranging for*, receipt, delivery, elevation, transfer in transit ... storage, handling, packing, unpacking, and interchange of passengers and property." 49 U.S.C. § 13102(23) (italics added).

7. CHRW's "Carrier" status for Carmack Amendment purposes does not depend on whether it merely "arranged for" transportation of Toms' Cargo.

> "Transportation" is defined broadly to include "services related to [the] movement [of passengers or property], *including arranging* for, receipt, delivery, elevation, transfer in transit ... handling, packing, unpacking, and interchange of passengers and property." 49 U.S.C. § 13102(23)(B). Thus, liability under the Carmack Amendment "*extends beyond the carrier who actually provides the transportation.*" [Citations omitted].

Corbin v. Arkansas Best Corp., 2008 WL 631275 at **6-7 (E.D. Ark. 2008) (italics added), *quoting*, Land O'Lakes v. Superior Svc. Transp. of Wisc., 500 F.Supp.2d 1150, 1155 (E.D. Wis. 2007), *and*, Mach Mold Inc. v. Clover Assocs., Inc., 383 F.Supp.2d 1015, 1030 (N.D. Ill. 2005).

8. A "broker" is defined by the Carmack Amendment to be "a person, other than a motor carrier or an employee or agent of a motor carrier, that *as a principal or agent* sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation." 49 U.S.C. § 13102(2) (italics added).

9. CHRW did not act or offer its services to Toms "as a principal or agent" to connect Toms with any third-party trucker, and therefore did not act as a Carmack "broker." *See*, 49 U.S.C. § 13102(2). *See also*, Plaintiffs' Post-Trial Proposed Findings of Fact (hereinafter "PFF") Nos. 8-12 and 43-53.

10. For purposes of the Carmack Amendment, the term "broker"

> means a person who, for compensation, arranges, or offers to arrange, the transportation of property *by an authorized motor carrier*. Motor carriers, or persons who are employees or bona fide agents of carriers, *are not brokers* within the meaning of this section *when they arrange or offer to arrange the transportation of shipments which they are authorized to*

3

> *transport and which they have accepted and legally bound themselves to transport.*

> 49 CFR § 371.2(a) (italics added).

11. CHRW represented itself to Toms as "one-stop shipping" with responsibility for transporting Toms' Cargo, because CHRW "offer[ed] no indication that its only role was to secure a third party to ship [Toms'] goods." Pelletron Corp. v. C.H. Robinson Worldwide, Inc., 2012 U.S. Dist. LEXIS 106579 at *12 (E.D. Pa. 2012) (considering and rejecting CHRW's identical "broker" contention in a prior action). *See*, PFF 32-38, 43-53 and 57-62.

12. CHRW did not "offer to arrange ... transportation of [Toms'] property by an authorized motor carrier"; Instead, CHRW did not identify or disclose to Toms any motor carrier on whose behalf CHRW supposedly "offered to arrange" transportation of Toms' shipments. *See*, PFF 8-12, 32-38, 43-53, 57-62 and 129-144.

13. Even if, *arguendo*, CHRW's "understood role was to arrange the transportation for [Toms'] goods," this would not make CHRW a broker for Carmack Amendment purposes. Custom Cartage, Inc. v. Motorola, Inc., 1999 U.S. Dist. LEXIS 16462 at *23 (N.D. Ill. 1999) [1]; *also*, 49 U.S.C. § 13102(23)(B) (Carmack Amendment definition of "Transportation").

14. CHRW was authorized by Toms to transport Toms' Cargo. *See*, PFF 32-42 and 75-76.

---

[1] reconsideration denied, 1999 U.S. Dist. LEXIS 18507 (N.D. Ill. 1999).

15. By holding itself out to Toms as the only entity which would be responsible for moving Toms' shipments from origin to destination, CHRW bound itself to transport Toms' cargoes. *See*, 49 CFR § 371.2(a); *see also*, PFF 32-62.

16. CHRW cannot be a "broker," as that term is defined in the Carmack Amendment, because CHRW was authorized by Toms to transport the Cargo and CHRW bound itself to Toms to transport the Cargo. 49 CFR § 371.2(a); *also*, PFF 32-62 and 75-76.

17. "The crucial distinction is whether the party legally binds itself to transport, in which case it is considered a carrier." <u>Nebraska Turkey Growers Coop. Assn. v. ATS Logistics Svcs., Inc.</u>, 2005 U.S. Dist. LEXIS 31683 at **14-15 (D. Neb. 2005).

18. Having agreed to transport Toms' shipments from origins to destinations without in any way holding itself out to Toms as a broker or as anything other or less than a Carrier, CHRW cannot be a "broker" for Carmack purposes. <u>Custom Cartage</u>, *supra*, 1999 U.S. Dist. LEXIS 16462 at *24 ("[the company] would be precluded from being a broker if it had been authorized to transport the goods and accepted and legally bound itself to so transport them").

## PART II

### THE BILL OF LADING, AND THE CHRW INVOICE, ARE CONSISTENT ONLY WITH CHRW HAVING ACTED AS A CARRIER

**A.    The Bill of Lading:**

19. The Bill of Lading covering the subject shipment identified "CH Robinson" only as a "Carrier," and not as a broker or as having any other role than that of a Carrier with respect to the Cargo. Pl. Ex. A. *See*, PFF 77-82.

20. Despite having received the Bill of Lading, and having been notified of the loss and Toms' intention to hold CHRW responsible, CHRW never protested or objected at any time to the Bill of Lading description of "CH Robinson" as "Carrier." *See*, PFF 82-87.

21. By failing to protest or object to the Bill of Lading description of "CH Robinson" as "Carrier" at any time prior to this litigation, CHRW accepted and ratified that description. *See*, PFF 77-88.

**B.   The CHRW Invoice:**

22. The Invoice for the Cargo was issued to Toms by CHRW on or about September 12, 2013, nearly two months after CHRW's having been notified of the loss and Toms' intention to hold CHRW responsible for the loss. *See*, CHRW Invoice, Pl. Ex. C; *also*, PFF 89-90.

23. In issuing its Invoice for the transportation of Toms' Cargo covered by the Bill of Lading (Pl. Ex. A), CHRW made no protest or objection to the Bill of Lading's description of "CH Robinson" as "Carrier." *See*, PFF 91-95.

24. By issuing its September 12, 2013 Invoice with no protest or objection to the description of "CH Robinson" as "Carrier" on the Bill of Lading, CHRW accepted and ratified the Bill of Lading description. *See*, PFF 91-95.

25. The Invoice issued to Toms by CHRW for the Cargo described the amounts charged as "Line Haul" and "Fuel Surcharge," and made no reference to brokerage or commissions. Pl. Ex. C; *also*, PFF 109-119.

26. The "Fuel Surcharge" and "Line Haul" charges on CHRW's Invoice to Toms are facially consistent with *carriage* and *transport*, not mere "brokerage." *Accord*, Nipponkoa Ins. Co.

6

v. C.H. Robinson Worldwide, Inc., 2011 U.S. Dist. LEXIS 17752 at *18 (S.D.N.Y. 2011) (Court in a prior case noting that CHRW's invoices stated "Line Haul" charges, with no mention of brokerage commissions). *See*, PFF 110-119.

27. Despite being aware of the loss, and of Toms' intention to hold CHRW responsible for the loss, in July 2013, CHRW in its September 2013 Invoice did not:

- Describe its services as "brokerage," or

- describe its charges as "broker's commissions," or

- protest or object to the Bill of Lading's description of "CH Robinson" as "Carrier," or

- disclose that a third-party trucker (NRT) had physical custody of the Cargo at the time of the loss, or

- name or identify any third-party trucker.

*See*, PFF 94-118.

28. Despite knowing that the Bill of Lading identified it as the "Carrier", and having ample opportunity after learning of the loss to issue an Invoice which would define its role as other than that of a Carrier, CHRW did nothing to identify itself to Toms as a "broker" until *after* this litigation was commenced. This is strong indication that CHRW was content to hold itself out to Toms, even as late as two months after the loss, as a Carrier and not as a "broker." *See, e.g.*, Pelletron, *supra*, at *11, *and*, Nipponkoa at **18-19 (in two cases on nearly identical facts, CHRW failed to take action to correct its identification as "Carrier" on truck bills of lading, or to dispel the customer's resulting impression that CHRW was acting as Carrier, despite that "CHRW's customary practice is to inform a customer of inaccuracies" in cargo documents.

7

## PART III

### CHRW'S SELF-LABELING AS A "BROKER," FIRST ASSERTED IN THE CONTEXT OF THIS LITIGATION, IS WITHOUT EFFECT

29. Though the parties had done business together since at least 2008, CHRW never referred to or described itself to Toms as a "broker" of Toms' shipments prior to this 2015 litigation. *See*, PFF 32-62 and 69-76.

30. That CHRW now identifies as a broker is not dispositive of its status under the Carmack Amendment.

> [W]hat one labels oneself does not determine one's status. *See, e.g., id.; cf. Phoenix Assurance Co. v. K-Mart Corp.*, 977 F.Supp. 319, 326 (D.N.J. 1997) (registration as broker and failure to register as carrier does not determine status). The crux of the inquiry into [an entity's] status revolves around the nature of the relationship between [it] and [the customer].

Custom Cartage, *supra*, 1999 U.S. Dist. LEXIS 16462 at **25-26, *citing*, Paul Arpin Van Lines, Inc. v. Universal Transportation Svcs., 988 F.2d 288, 292 (1st Cir. 1993). *See also*, Nipponkoa, *supra*, 2011 U.S. Dist. LEXIS 17752 at **12-13, *and*, Nat'l Union Fire Ins. Co. v. All Amer. Freight, Inc., 2016 U.S. Dist. LEXIS 19014 at *22 (S.D. Fl. 2016).

31. "The law determines status according to the *services offered* by an entity, rather than by its corporate character or declared purpose." Delta Research Corp. v. EMS, Inc., 2006 U.S. Dist. LEXIS 20896 at *6 (E.D. Mich. 2006) (italics added), *citing*, Mass v. Braswell Motor Freight Lines, Inc., 577 F.2d 665, 667 (10th Cir. 1978), *and*, Ensco, Inc. v. Weicker Transfer and Storage Co., 689 F.2d 921, 925 (9th Cir. 1982). *Accord*, Hughes Aircraft Co. v. North American Van Lines, Inc., 970 F.2d 609, 613 (9th Cir. 1992).

32. "The Courts look at whether the party *holds itself out ... as the actual transporter of goods*." Delta Research, *supra*, 2006 U.S. Dist. LEXIS 20896 at **6-7 (italics added), *citing*, Syracuse Plastics, Inc. v. Guy M. Turner, 959 F.Supp. 147, 150 (N.D.N.Y. 1997).

33. CHRW held itself out to Toms at all times as the actual transporter of Toms' goods. *See*, PFF 32-62 and 69-76.

## PART IV

### THAT CHRW DID NOT HAVE PHYSICAL POSSESSION OF THE CARGO DOES NOT AFFECT CHRW'S CARRIER STATUS

34. CHRW argues that it acted only as a "broker" with respect to Toms' cargo because CHRW did not physically carry the subject cargo.

35. That NRT, and not CHRW, was physically in possession of the shipment at the time of the casualty in no way affects CHRW's role as "carrier" or its liability under the Carmack Amendment. *See, e.g.*, Saacke N. Amer. LLC v. Landstar Carrier Svcs., 2013 U.S. Dist. LEXIS 178313 at *26 (W.D. N.C. 2013) ("carriers do not become brokers *just because they arranged for someone else to transport a shipment* they accepted and legally bound themselves to transport [internal quotation marks omitted, italics added]").

36. It makes no difference to CHRW's Carrier status that CHRW did not own the truck on which Toms' shipment was damaged:

> [O]wnership of the vehicles used to transport the goods is not dispositive of whether Custom was providing transportation or selling the transportation of another motor carrier.

Custom Cartage, *supra*, 1999 U.S. Dist. LEXIS 16462 at **22-23, *citing*, definitions of "broker," "motor carrier" and "transportation" in 49 U.S.C. § 13102(2), (14) and (23), respectively.

37. An entity such as CHRW "is not precluded from being a motor carrier by the mere fact that none of its own motor vehicles are used in the transporting of goods." Custom Cartage, *supra*, 1999 U.S. Dist. LEXIS 16462 at *23, *citing*, Keller Industries, Inc. v. U.S., 311 F.Supp. 384 (N.D. Fla. 1970), *and*, FDL Foods, Inc. v. Kokesch Trucking, Inc., 233 Ill.App.3d 245, 253-54, 174 Ill. Dec. 474, 599 N.E.2d 20 (1992). *Accord*, Nipponkoa, *supra*, 2011 U.S. Dist. LEXIS 17752 at *12.

### PART V

### THAT CHRW HELD A GOVERNMENT-ISSUED AUTHORITY AS A TRANSPORTATION BROKER, AND FAILED TO OBTAIN GOVERNMENT CARRIER AUTHORITY, IS IMMATERIAL

38. That CHRW failed to apply for or hold a government-issued motor carrier license is irrelevant to CHRW's Carrier status under the Carmack Amendment. *See, e.g.*, Nipponkoa, *supra*, 2011 U.S. Dist. LEXIS 17752 at **12-13; Chartis Seguros Mex. S.A. de C.V. v. HLI Rail Rigging LLC, 2014 U.S. Dist. LEXIS 33807 at *14 (S.D.N.Y. 2014); *see also*, PFF 138.

39. A company's registration as broker and failure to register as a carrier is not dispositive of Carmack Amendment status. Phoenix Assurance, *supra*, 977 F.Supp. at 326; Delta Research, *supra*, 2006 U.S. Dist. LEXIS 20896 at **5-6.

40. "A carrier's status ... is determined not by reference to its authority *but rather by reference to what it holds itself out to be*." Ensco, *supra*, 689 F.2d at 925 (italics added); Lumbermens Mut. Cas. Co. v. GES Exposition Svcs., Inc., 303 F.Supp.2d 920, 921 (N.D. Ill. 2003).

## PART VI

### EVEN THOUGH THE EXISTENCE AND CONTENTS OF CHRW'S "TERMS AND CONDITIONS" WERE UNKNOWN TO TOMS, THE DEGREE OF CONTROL OVER THE TRANSPORTATION RETAINED BY CHRW IN THOSE "TERMS AND CONDITIONS" IS NOT CONSISTENT WITH CHRW'S BEING A MERE "BROKER"

41. CHRW's Invoice, issued to Toms two months after the loss, referenced "terms and conditions" which were not known or provided to Toms. Pl. Ex. E, Terms and Conditions; *also*, PFF 120-128.

42. By providing that "[CHRW] shall use reasonable care in its selection of third parties or in selecting the means, route and procedure to be followed in handing, transportation, clearance and delivery of the shipment ...", CHRW's Terms and Conditions demonstrate that, even when not itself physically carrying the shipments, CHRW exercised significant control over the transport (*see*, CHRW Terms & Conditions, Pl. Ex. E, at par. 4, first sentence, *and*, PFF 128). This is a strong indication of Carmack Amendment "Carrier" status, notwithstanding that CHRW subcontracted the shipment to a third-party trucker. *See, e.g.*, Nipponkoa, *supra*, 2011 U.S. Dist. LEXIS 17752 at *13.

## CONCLUSION

43. Having never identified or held itself out to Toms as a broker, and having never offered its services to Toms as a broker, or agreed to provide brokering services to Toms, CHRW cannot be a "broker" for Carmack Amendment purposes.

44. CHRW was a Carmack Amendment "Carrier" with respect to Toms' Cargo.

Dated: New York, New York  
June 22, 2017

Respectfully submitted,

KENNEDY LILLIS SCHMIDT & ENGLISH  
Attorneys for Plaintiffs TRYG INSURANCE  
and TOMS CONFECTIONERY GROUP

By: _s/John T. Lillis, Jr._  
John T. Lillis, Jr., Esq.  
75 Maiden Lane, Suite 402  
New York, NY 10038  
Tel: (212) 430-0800  
JLillis@klselaw.com